Statement of the case.

ANNA VIRGINIA TROUTMAN v. LOUISVILLE & NASHVILLE
RAILROAD COMPANY.

[48 South. 515.]

RAILROADS. *Passenger. Cause of death. Evidence. Peremptory instruction not warranted.*

In a suit against a railroad company for the alleged wrongful death of a passenger, last seen before his death on the platform of a passenger coach preparatory to alighting therefrom upon a rough and irregular station platform, as the train reached his destination at night, there being no lights save those on the train itself, and his dead body, having severe bruises upon it, was found as the train began leaving the station and had moved less than a car length from where it made a very short stop, and blood was found on the cross-ties supporting the railroad track, the case did not warrant a peremptory instruction for the defendant, but it should have been left to the jury to determine whether decedent came to his death from the running of the train.

FROM the circuit court of Harrison county.

HON. WILLIAM H. HARDY, Judge.

Mrs. Troutman, appellant, was plaintiff in the court below; the railroad company, appellee, was defendant there. From a judgment in defendant's favor, predicated of a peremptory instruction, the plaintiff appealed to the supreme court.

The plaintiff sued defendant for the alleged wrongful death of her husband, Herman Troutman, who came to his death at Long Beach, a station on defendant's railroad.

The proof shows that the deceased was a passenger on defendant's passenger train which arrived at Long Beach at night; that there were no lights on the platform of the station, except such as came from the car windows; that the floor of the platform was rough and irregular; that when the deceased was last seen before his death, he was standing on the platform of the train preparatory to alighting therefrom; that as the train

started from the station, and before it had run a car length, the dead body of the deceased was seen lying by the side of the track, with severe bruises on his head and face, and blood was found on the cross-ties supporting the track. There were no eye witnesses to the accident. The defendant denied that the running of its cars was the cause of the death of Troutman but plaintiff contended that the death of her husband was caused by the running of the cars.

*J. J. Curtis* and *J. H. Mize,* for appellant.

Herman Troutman, deceased, was a passenger from the city of New Orleans, Louisana, to Long Beach, Mississippi, on defendant's train, on October 27, 1905.

The train arrived at Long Beach after dark. Mr. Troutman was notified by the conductor before the train reached Long Beach that the next station would be his stop; Troutman then got up, picked up his bundles, and walked out of the car. When last seen alive, he was standing on the platform of the train with his two bundles under his arm. A few minutes later, Troutman's body was found lying near the railroad track at the Long Beach station, his feet and part of his body lying on the platform and his head being off the platform and anywhere from six to eighteen inches from the track. The platform was a low platform, about eighteen inches from the ground, upon which passengers alighted from defendant's trains. When found, Troutman had his head crushed; his cheek was bruised; there were bruises on his shoulder and fingers; and two small pieces of bone were found where his body lay. There was blood on the cross-ties near where his body lay, and blood in an oyster shell near his body.

All the witnesses, but one, testified that the train, after leaving Long Beach, had gone but from one car length to one hundred and twenty feet when the cry of "dead man" was raised and the train stopped and the body discovered. One witness, Helm, testified that the train was just pulling out when he saw

the dead body. Helm was an employe of defendant. There is no evidence that any eye witness saw deceased when he met his death. There is a conflict as to how long the train on which deceased was a passenger stopped at Long Beach that night to allow passengers to alight. Witness Doty, a prominent lawyer who was on the train, testified that the train stopped scarcely a minute; that the length of time it stopped at the station was hardly perceptible. Other witnesses, for the railroad company, testified that it stopped longer than usual on that occasion.

Defendant endeavored to show that deceased was subject to epileptic fits; had been for several years. The evidence shows that, when he got up to leave the train on the occasion of his death, he was in good spirits and there was nothing wrong with him.

It was dark when the train in question reached Long Beach; defendant had no lights anywhere about the platform to light it; the platform was rough and uneven where the passengers had to alight and the only light on the scene came from the car windows or from the light in the station itself, there being no platform light whatever. Since the accident in question, platform lights have been erected.

If the running of said train did not kill Troutman, then defendant is entitled to a verdict.

Was Troutman killed by the running of said train? It is true that no eye witness saw the actual killing, but the position of the remains, and the condition of the body when found leave no substantial doubt as to his having been killed by the running of the train.

What but the running of the train could have caused his death and left these marks on his body? At any rate, this was a question for the jury to determine. The court, in giving the peremptory instruction for the defendant, undoubtedly assumed that the running of the cars did not kill Troutman, or that, if it did kill him, defendant showed clearly how the accident occured and further showed facts which exculpated it from negligence.

This, the court had no right to do, as these were questions for the jury.

If the running of the cars did not kill deceased, what did kill him? He surely did not commit suicide. For a man could not very well commit suicide and smear the rails for several feet with his own blood and extract a couple of his bones and lay them near the track and place himself in the position in which deceased was found. If some one struck him on his head with a club, the bruises on the cheek and shoulder and other bruises cannot be well accounted for, and, besides the time was too short between the time he was in the act of alighting and the time he was discovered for any violence of this kind to have been done him.

These were questions for the jury, and the jury, as we contend, being authorized by the evidence to find that the running of defendant's train killed Troutman, the rights of the respective parties to this suit are these:—

The plaintiffs have made out a *prima facie* case under Code 1906, § 1985, and are entitled to recover.

The railroad company, to exculpate itself, must show how Troutman was killed and, in showing this, must show further such facts as will exonerate it of negligence, and to do this, it cannot resort to presumption or conjecture. *Landrum v. Yazoo etc., R. Co.,* 89 Miss. 399, 42 South. 675; *New Orleans, etc., R. Co. v. Brooks,* 85 Miss. 269, 38 South. 40.

*Gregory L. Smith* and *Harry T. Smith,* for appellee.

It is to be observed that there is no statutory presumption to be indulged in favor of the plaintiff upon the inquiry as to whether the death of Troutman resulted from a negligent condition of the platform or from a want of lights. The statute, Code 1906, § 1985, refers only to injuries which are inflicted by the running of locomotives or cars. It is manifest, therefore, that under those allegations which attribute the death of Troutman to

the condition of the platform, or to the want of lights, the burden rested upon the plaintiff to show that the death did result from these causes, and even in the appellant's brief it is freely conceded that the defense did not establish from what cause his death did result. Indeed, the absence of evidence upon this subject is made the sole basis of the insistence in the appellant's brief that the cause ought to have been permitted to go to the jury upon the statutory presumption of negligence arising out of the alleged fact that the killing resulted from the operation of the train. We must treat, therefore, of the allegations as to the condition of the platform and the want of lights, without the aid of the statutory presumption.

As to the allegations that the injury was due to defective conditions in the platform, the only evidence on the subject was to the effect that one plank was a half inch higher than another; there was no evidence that this condition of the platform had any connection whatever with the injury suffered by Troutman. It had been proven beyond any question and without dispute, that Troutman was subject to infirmities, supposed to have been due to asthma; that he frequently fell unconscious without any other contributing cause; that when suffering from these attacks, he was accustomed to use whiskey, and that on that occasion he had a whiskey flask in his pocket. The question arises whether, under these circumstances, the jury should have been permitted to guess that he fell by reason of the unevenness of the platform and not on account of having suffered from one of the attacks with which he was afflicted, and upon such a guess to have returned a verdict against the defendant.

In the case of *Southworth v. Shea,* 131 Ala. 419, the deceased was found near a hole which had been left by the defendant unprotected in the street, and it was insisted that it should have been left to the jury to determine, without any further evidence, that he came to his death by falling in this hole, but the supreme court of Alabama held that in order to recover it was necessary

to offer evidence not that an injury might have resulted from the cause alleged, but that *it did so* result, and that the general affirmative charge was properly given for the defendant.

In the case of *Southern R. Co. v. Shelton,* 136 Ala. 208, the deceased was found dead upon the railroad track at a crossing from which an approaching train could be readily seen for some distance. It was shown beyond dispute that the engine upon the train in question had a brilliantly lighted head-light and was ringing its bell, and it was insisted that from these circumstances the presumption arose either that Shelton was guilty of negligence in not ascertaining the approach of the train, or that he was guilty of negligence in going in front of the train after he had ascertained the fact that it was approaching. The defendant, however, has pleaded contributory negligence only in that the deceased failed to stop, look and listen before going upon the track, and the court held that where either of two conclusions might be drawn from the evidence, one of which would defeat the recovery, and the other of which would not, the jury could not be permitted to speculate without further evidence, as to which of the two had occured.

In the case of *Illinois, etc. R. Co. v. Cathey,* 70 Miss. 332, 12 South. 253, this court said: "It is not enough that the negligence of the employer and injury to the employe co-existed, but the injury must have been caused by the negligence, and the fact that injury to an employe occurred after the negligence is not sufficient to show the relation of cause and effect between them. *'Post hoc ergo propter hoc'* is not sound as evidence or argument. Nor is it sufficient for a plaintiff seeking recovery for alleged negligence by an employer, towards an employe, to show a possibility that the injury complained of was caused by negligence. Possibilities will not sustain a verdict. It must have a better foundation."

We, therefore, respectfully submit that the mere fact that there was an irregularity in the platform is not sufficient to have authorized a submission to the jury, in order that they might

speculate or assume that the death of Troutman might have resulted, and therefore did result from the irregularity in this platform, especially when the evidence furnished the basis for an equally, if not a more rational conclusion, that he fell by reason of an attack of asthma such as had caused him to fall upon many previous occasions. Which of the two, if either, of these causes made him fall, no one knew, and no one pretended to know.

As to the allegation that the injury resulted from a failure on the part of the defendant to light the lamps which had been established upon a post upon the platform, the evidence not only did not tend to support this allegation, but affirmatively proved the allegation to be untrue. In the first place, it was shown that no such posts had ever been established, as alleged in the complaint. It also appeared that there were a number of lanterns in the hands of trainmen standing at the steps and assisting passengers to alight, which furnished more light than would have been furnished by the lanterns upon posts, had they been erected as alleged in the complaint. But, in addition to this, the passenger cars of the train each had three groups of four lights each, which shone through the windows, on to the platform, which fact was perfectly conclusive of the falsity of the allegation that Troutman, who had come from New Orleans upon that very train, and who left it at the platform at which a blind lady was being assisted by a trainman with a lantern in his hand, came in contact with this train by reason of the absence of light. Several witnesses testified that after the train had left, it was dark upon the platform, but as Troutman's body was found before the train had left, and as he could not have been stricken by the train except while he was there, the question as to whether it was light or dark after the train had left was wholly immaterial.

Turning now to the allegation that Troutman suffered his death by reason of negligence in the operation of the train, it is to be observed, in the first place, that there was no evidence

tending to show that his death was due to a collision with the train.  One might assume that a person who is found dead upon a track, bearing such scars as to indicate a collision, came to his death by being struck by an approaching train.  But where a passenger alights from a train and is afterwards found dead opposite to the rear step of the car, from the front step of which he has alighted, and where he is found, as in this case, before the train has moved out, there is no basis for the presumption that he has been stricken by the moving train.

WHITFIELD, C. J., delivered the opinion of the court.

There was sufficient evidence in this case, manifestly, as to the question of fact whether the deceased was killed by the running of the cars, to require the submission of that fact to the jury.  The peremptory instruction was manifestly erroneous.

*Reversed and remanded.*